Labauve, J.
This suit is brought against the defendant, as endorser of a bill of exchange of the following tenor:
“Exchange for $2,000. New Orleans, September 4,1863.”
“At sight of this first of exchange, (second unpaid) pay to the order of myself two thousand dollars in gold, value received, and charge the same to account of. Your obedient servant,
(Signed) W. W. Bijel.
To John McClain, Brownsville, Texas.
Endorsed: Pay to the order of J. H. Carter.
(Signed) ' W.W. Buel.
Pay to the order of Miguel Puig, Esq., value received of Puig Brothers, New Orleans.
(Signed) “J. H. Carter.”
Petitioners allege that, having acquired said draft, they immediately forwarded it to Brownsville, Texas, to be presented for payment to the drawee, and that after due, diligent search and inquiry, the said drawee could not be found in Brownsville or elsewhere, and that he was absent from Brownsville and its vicinity — his residence being unknown; that there was in Brownsville, at that time, no notary public or other officer authorized to make a formal .protest, and give notice of non-payment; that as soon as possible thereafter, the said draft was returned to New Orleans, and the said defendant, Carter, notified of its non-payment, and return of the same.
The plaintiffs admit a payment of two hundred and fifty dollars in gold on account.
The answer pleads the general issue. That plaintiffs have granted time to the drawer and drawee for the payment of said draft; that defendant is discharged as endorser; that said draft was drawn and negotiated in violation of law, and is null and void.
Judgment was rendered below in favor of plaintiffs, and the defendant appealed.
In relation to the presentment for, and demand of payment, and the impossibility to protest, the following is the only evidence:
Gabriel DaOorral, who testified: “In December, 1863, he was in the employ of Miguel Puig, in Matamoras. This draft was received in Matamoras on the first of October, 1863. He went over to Brownsville to collect-the draft, but Mr. McLean, the drawee, could not be found at that time. All foreigners had the right to cross over to Brownsville and back to Matamoras. He tried to protest the draft in Brownsville, but he could not find a notary, nor any one authorized to protest a note. To the best *415 of his knowledge, there was no such person so authorized. The draft remained there till about the 24th October, 1863, when it was returned to New Orleans.”
We are satisfied that this testimony do«3 not show that due diligence that the law-merchant imposes on holders of bills, in the presenting for, and demand of, payment of bills and notes. All that the witness says might be very true, and yet the drawee might have had a home, a domicil, and a commercial house, none of which is negatived by this vague testimony.
This witness does not pretend that he looked or enquired for the domicil of the drawee; but he simply says that the drawee could not b & found ai that time; this might happen to the most permanent residents, to be absent at times.
We are of opinion that, for want of due diligence in presenting the draft to, and making demand of payment of, the drawee, the defendant has been discharged as endorser. 10 L. 390. 4 R. 18. 7 R. 451. 6 L. 730. 10 A. 107.
It is therefore ordered and decreed, that the judgment appealed from be annulled and avoided. It is further ordered and decreed, that there be judgment rendered in favor of the defendant, and that plaintiffs and appellees pay costs in both courts.
Rehearing refused.